Richard Pearl for Carlos Meza, the appellant, and I would like to reserve two minutes for rebuttal. Mr. Meza was convicted on one count of a two-count indictment, both charges alleging wire fraud. We are asking that this court vacate the sentence and remand for re-sentencing because the district court erred in calculating the amount of loss for purposes of the guidelines and the Mandatory Victim Restitution Act. For purposes of this appeal, this court does not have to determine that the district court actually got the sentence wrong. It is enough to remand if the district court did not adequately document its reasons or if there are other points in the record that the district court did not adequately assess, particularly if the record is not sufficient to allow a meaningful appeal by this court. I would note that the analysis under the guidelines and the MVRA appears to be the same in view of a position the government took in its response brief. In our opening brief, we argued that the district court erred in its analysis of relevant conduct to the crime of conviction. The government's position is that the district court did not assess any loss pursuant to the relevant conduct analysis, but as part of the crime of conviction. Therefore, what I would like to do is focus on the crime of conviction and the analysis of the crime of conviction, still understanding that we have made arguments as to the relevant conduct analysis in the event the court wants to consider that issue. A brief background is the jury reached its split verdict after trial finding Mr. Meza not guilty on count two of the two-count indictment. The indictment count one, which was multiple pages, alleged a broad multi-year scheme to defraud Mr. Meza's investment opportunities. The two underlying investment opportunities were themselves fraudulent, but the government acknowledges that Mr. Meza was not part of that fraud and did not personally benefit from any of the transfers to the underlying investments. The particular wire transfer alleged in count one was a May 2012 transfer by someone named Scott Spencer. Count two then in one paragraph purported to incorporate all of the allegations in count one except for the allegation relating to Mr. Spencer's specific transfer, and then count two alleged a transfer in September of 2012 of $50,000 by a man named Cordell Crane. The district court's assumption is that the jury convicted on count two, but not on count one because of the difference in the dates of the alleged wire transfers. The district court, I believe, assumed that the jury thought that Mr. Meza had formed some intent or knew that certain representations were false in September, but perhaps did not have that intent or did not make knowing misrepresentations as early as May. The particular misrepresentations that the government alleged involved Mr. Meza's wealth, his experience, his investment experience with these two particular investment opportunities, his business connections and the like, as well as a misrepresentation to Mr. Crane specifically with regard to that $50,000 transfer. What Mr. Meza told Mr. Crane that Mr. Meza, when he received the $50,000 directly from Mr. Crane, that Mr. Meza would forward it to the underlying investment. The same day that Mr. Meza received it, he withdrew the funds and used them for personal reasons. Uh, and he acknowledged at trial that he always Mr. Crane this money. Um, there are several reasons why the district court's assumption about the jury's verdict and the crime of conviction is irreconcilable, I believe, with the record, but at least insufficient in view of the entire record and deserves further consideration by the district court. The first is the government's own explanation of count to an argument to the jury during its closing argument. When the government was imploring the jury to convict Mr. Meza, it spent what amounted to several pages of argument discussing the broader alleged scheme, the misstatements about his background, his experience in his finances. Um, when it specifically discussed count to the government said that count to alleges that Mr. Meza lied to Mr. Crane about where his money would go and used it personally. Now that is a different type of wrongful conduct. And the jury, the jury's conviction on count to and not of count one at least raises questions in view of that argument alone, whether the jury was convicting of a scheme to defraud all the investors or, as the government argued, viewed count to as relating to Mr Meza's misappropriation of funds. Um, I should also mention that the majority of the other investors sent their money directly to the underlying investments, uh, with the exception of some money from Scott Spencer, who was the principal subject of count one. Um, and that is another distinguishing feature of the transfer alleged in count to the second point that I think the district court overlooked is in view of the government's argument is the nature of the indictment itself. It's well, it's not improper for the government to incorporate, uh, allegations in an indictment into another count. And by the way, I hate to break this up, but I don't have a clock on my screen any longer. So you have 40, you have 40 seconds. Thank you. I'll let you know when you reach to. Oh, I appreciate that. Um, the, the, the nature of the indictment, as I discussed, and the, uh, count to alleging the transfer by Mr Crane in September of 2012, but purporting to incorporate other allegations. Um, the third is that the trial testimony itself when it came to Mr Crane, uh, there was a lengthy portion of the trial that focused on whether or not the amount Mr Crane sent to Mr Meza was alone. Um, whether Mr Crane knew that Mr Meza might use it or whether it would be transferred to someone else. That's a very different type of case, a very different type of fraud from the broader scheme that the government alleged in count one. Um, and the fourth reason is I think the, the, the jury's acquittal on count one, uh, signals that the jury did not accept the theory that investors were defrauded by these alleged misstatements about Mr Meza's finances and his background and his experience because, um, no facts had changed between May of 2012 and September of 2012 that would have made those statements true in May, but not true in September. The principal and most significant difference between the counts was the fact that Mr Meza told Mr Crane that Mr Meza would send his money, but personally misappropriated it. What the district court should have done was create an adequate record and explicitly explain what the offensive conviction was, uh, enough certainly for this reviewing court to adequately analyze. Um, and this error resulted in the inclusion of losses of nearly 18 times the amount alleged in count two. Uh, this court has said in the past, you are now just a little under two minutes. Okay. Uh, thank you very much for that. I would Good afternoon and may it please the court. My name is Alex Morgan. I'm here on behalf of the United States. The district court did not clearly err in calculating the losses stemming from the count of conviction. At sentencing, the district court properly found that the defendant caused $881,500 in losses over the course of his scene. This was a conservative estimate and one that took into account the jury's acquittal on one of the two fraud counts and gave the benefit to the defendant of that acquittal. The district court held the defendant responsible for all losses occurring from September 2012 and forward, the point at which Mr Crane made that $50,000 payment that was identified in the count of conviction. And this was rooted in the jury's determination that by no later than September 2012, the defendant knowingly engaged in a scheme to defraud. At this point, there was really no question that the defendant had witnessed his victim's investments not pay the returns that he promised and that he knew of the fraud he was perpetrating. The district court's calculation was well within the realm of permissible computation and it was well supported by record evidence. The district court had provided over a four-day trial and heard testimony from three of the victims of the defendant's scene, Mr Spencer, Mr Crane, and Mr Yalko. Prior to sentencing, the parties briefed the issue of lost money and the government submitted reliable evidence as to the losses of two additional victims, Mr George and Mr Tomlinson. This evidence established the misstatements the defendant had made to these victims over the course of his scheme, misstatements about his background and personal wealth, misstatements about the risks involved in the investments and the expected return on the investments, misstatements about the defendant's own participation in the scheme, and to some of the victims' misstatements about where their money was going. And at the sentencing hearing, the court heard argument about the loss amount from both parties, including the government's argument that by no later than September 2012, the jury had determined that the defendant was knowingly engaged in a scheme to defraud and the defendant should be held responsible for all losses incurred from that point forward. The court credited this reasoning and arrived at a loss amount of $881,500. I'd like to briefly touch on counsel's argument that the types of misrepresentations made to Mr Crane are different in kind than the misrepresentations made to the other victims and that this was a separate, potentially different scheme. I think Mr Crane's trial testimony supports a different conclusion. It involves Mr Crane's testimony that the defendant made misrepresentations to him, first about his initial investment regarding the return on the investment, the risk that was involved, and the fact that that money was personally guaranteed by the defendant. Mr Crane's later payments were also related to this initial $50,000 payment. And these types of misstatements that the defendant made to Mr Crane were the same types of misstatements that the defendant made to the other victims in the course of the scheme. For the same reasons that I just discussed, the restitution order was not an abuse of discretion. Under the Mandatory Victim Restitution Act, restitution was required to any person directly harmed by the defendant's criminal conduct in the course of the scheme. As it was required to do, the court adequately demarcated the scheme of which the defendant was convicted. And the same evidence that I just discussed demonstrates that the losses from September 2012 onward stemmed from the defendant's scheme to obtain the victim's money to invest in international trading programs. Restitution was ordered for victims that were directly harmed by the scheme for which the defendant was convicted. A thorough discussion of these issues occurred at sentencing and is available in the record to give this court an adequate basis upon which to review. For all of these reasons, the government asks that this court affirm the defendant's sentence. And if there's nothing further... Yes, thank you, Your Honor. I disagree with the statement that the district court at sentencing adequately considered these issues and particularly the evidence relating to Mr. George and Mr. Tomlinson. Those points are set forth in our briefs as well as the portions of the sentencing transcript. But what they reveal is that the underlying information that the district court may have been relying upon, and I say may have been because, like the Sykes case that this court decided, the district court adopted the PSR only by checking a box in the statement of reasons, an action that the government itself in its brief characterizes as nothing more than a mark on a boilerplate form. During the sentencing hearing, though, the discussion about Mr. George and Mr. Tomlinson actually revealed that the government did not have support for some of the alleged misrepresentations. Also, one more point I'd like to address is it's interesting that the government is still taking the position that the jury found Mr. George guilty of misrepresentations. I think it's incumbent upon the court to consider what do you do with the defendant who's acquitted of a broader charge that includes the very misrepresentations that the government is claiming the jury found him guilty of in count two. The district court should at least clarify the record so this court can perhaps provide a better assessment for purposes of Mr. Meza's loss calculation. Thank you. Yes. Thank you, Mr. Pearl. And the court appreciates your willingness and that of your law firm to accept the appointment and the assistance you've been to the court as well as to your client. The case is taken under advisement and the court will be in recess.